IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| ARKANSAS SAFE FOODS | ) | Misc. No. 3:22-mc-3993-ECM-SMD |
| PATENT INFRINGEMENT | ) | |
| LITIGATION | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

This cause arises from a subpoena issued to Sacit Bilgili, D.M.V., Ph.D. ("Dr. Bilgili") to testify at a deposition in a civil action in the United States District Court for the Eastern District of Arkansas. Dr. Bilgili is a resident of the Middle District of Alabama. Therefore, this Court has jurisdiction over his motion to quash the subpoena.  For the reasons that follow, the undersigned recommends that the subpoena be quashed.

## I.    UNDERLYING LITIGATION AND PROCEDURAL BACKGROUND

Enviro Tech Chemical Service, Inc. ("Enviro Tech") sued Safe Foods Corporation ("Safe Foods") in the Eastern District of Arkansas for infringement of U.S. Patent No. 10,912,321 ("the '321 patent"). Mot. (Doc. 1) p. 1. The '321 patent is directed to methods of using peracetic acid to treat poultry in a chill tank during processing. *Id*. Safe Foods provides antimicrobial intervention services to poultry producers such as Tyson and Pilgrim's Pride. *Id.* at 1-2. Enviro Tech's complaint alleges that Safe Foods, either alone or in combination with poultry producers, practices the patented methods claimed in the '321 patent. *Id.* at 2.

As part of the Arkansas litigation, Enviro Tech included Dr. Bilgili in its Rule 26(a) disclosures as a person likely to have discoverable information that Enviro Tech may use

to support its claims or defenses. *Id.* Dr. Bilgili, as explained more fully below, provided declarations for Enviro Tech as part of their '321 patent prosecution. *Id.* at 2-3. Safe Foods served Dr. Bilgili with a deposition subpoena to which Dr. Bilgili now objects.

## II.    FACTUAL BACKGROUND

Dr. Bilgili is a poultry science expert who provided three declarations during the prosecution of Enviro Tech's patent application. *Id.* at 2-3. Dr. Bilgili's declarations discussed why a person skilled in the art of poultry processing would not have found Enviro Tech's patent claims obvious. *Id.* at 3. Originally, the United States Patent and Trademark Office ("USPTO") rejected Enviro Tech's claims as being obvious over various combinations of prior-art references, such as patent publications and journal articles. *Id.* Ultimately, however, the USPTO Patent Trial and Appeal Board ("PTAB") reversed the USPTO's rejections and found Enviro Tech's claims patentable. *Id*. In reversing the USPTO, the PTAB referenced declaration testimony of five declarants, including Dr. Bilgili, to show that prior industry practice pointed away from the methodology claimed in the '321 patent.[1] *Id.* Based on the PTAB decision, the '321 patent issued. *Id.*

---

[1] The PTAB's reference to Dr. Bilgili's declaration testimony is as follows:

> Consistent with Kurschner and Baumeister, Appellant also presents testimony supporting that prior industry practice was use of peracetic acid at an acidic pH. See Appel Br. 41-53 (explaining declarants' testimony); see also Neptune Generics, LLC v. Eli Lilly & Co., 921 F.3d 1372, 1377-78 (Fed. Cir. 2019) ("our caselaw . . . recognizes a range of third-party opinion that can constitute skepticism" that supports nonobviousness).

Mot. Ex. C (Doc. 1-3) p. 160.

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 45(d)(3) provides the grounds on which a court may quash a subpoena to a non-party. Relevant here, the Rule provides that a court *must* quash or modify a subpoena if it "subjects a person to an undue burden." FED. R. CIV. P. 45(d)(3)(A). Additionally, the Rule provides that a court *may* quash or modify a subpoena, if it requires "disclosing an unretained expert's opinion[.]" FED. R. CIV. P. 45(d)(3)(B).

When considering whether a subpoena violates Rule 45's undue burden prohibition, a court should account for the scope of discovery permitted by Rule 26 and should quash a subpoena that seeks irrelevant information. *Jordan v. Comm'r, Miss. Dep't of Corrections*, 947 F.3d 1322, 1329 (11th Cir. 2020). Importantly, "[t]he status of the subpoena recipient as a non-party is also a factor that can weigh against disclosure in the undue burden inquiry." *Id.* at 1337. When considering whether a subpoena impermissibly seeks expert testimony, a court should examine whether the subpoena is designed to take the deponent's intellectual property without compensation. *See* FED. R. CIV. P. 45(c)(3)(B)(ii) advisory committee's note ("[C]ompulsion to give evidence may threaten the intellectual property of experts denied the opportunity to bargain for the value of their services."). If it does, the court may quash the subpoena. FED. R. CIV. P. 45(d)(3)(B)(ii).

"The Federal Rules of Civil Procedure . . . strongly favor full discovery whenever possible." *Moore v. Armour Pharm. Co*., 927 F.2d 1194, 1197 (11th Cir. 1991) (citing FED. R. CIV. P. 26(b)(1)). The moving party bears the burden to show that the subpoena should or must be quashed under Rule 45(d)(3). *Jenkins v. Koch Foods, Inc.*, 2020 WL 12992000,

at *2 (M.D. Ala. Mar. 11, 2020) (quoting *Malibu Media, LLC v. Doe*, 2015 WL 574274, at *3 (M.D. Fla. Feb. 11, 2015)).

## IV.   ANALYSIS

Dr. Bilgili moves to quash the subpoena issued by Safe Foods for two reasons: (1) the subpoena is unduly burdensome, and (2) the subpoena constitutes an improper attempt to obtain his expert testimony. As explained below, the undersigned finds that the subpoena must be quashed because it is unduly burdensome and should be quashed because it is an improper attempt to obtain expert testimony.

### 1.   Whether the subpoena is unduly burdensome.

As set forth above, a court must quash or modify a subpoena if it "subjects a person to an undue burden." FED. R. CIV. P. 45(d)(3)(A). In determining whether a subpoena imposes an undue burden, courts consider the relevance of the discovery sought and whether the request for that discovery is proportional to the needs of the case. FED. R. CIV. P. 26(b)(1).

The crux of Dr. Bilgili's involvement in the underlying litigation relates to the declarations he provided as part of the '321 patent prosecution. It appears that he holds no discoverable information related to the '321 patent post issuance.[2] Therefore, while Dr. Bilgili likely possesses relevant information pertaining to the *acquisition* of the '321 patent,

---

[2] Dr. Bilgili avers that he has not been retained by Enviro Tech in any capacity since 2019, approximately 2 years prior to the issuance of the '321 patent. Reply (Doc. 14) p. 2; Mot. (Doc. 1) p. 3. This suggests that Dr. Bilgili's role in the '321 patent is limited to the patent prosecution and not the alleged infringement. Additionally, it is notable that, along with the deposition subpoena, Safe Foods also served Dr. Bilgili with a document subpoena requesting documents related to the '321 subpoena and communications with Enviro Tech dated after the issuance of the'321 patent. Mot. (Doc. 1) p. 2. There were no responsive documents, suggesting that Dr. Bilgili does not possess information post patent issuance.

it is unlikely that he possesses relevant information regarding *infringement* of the '321 patent. As such, Dr. Bilgili's testimony is minimally relevant to the claims presented in the Arkansas litigation.

To be sure, Safe Foods is defending the Arkansas litigation by claiming that Enviro Tech's methodology is obvious and that the '321 patent is therefore invalid. Because Dr. Bilgili opined as to the obviousness of the '321 patent in its pre-patent prosecution, he arguably possesses information relevant to Safe Foods's defense. But to the extent Safe Foods wishes to question Dr. Bilgili regarding the pre-patent prosecution and the opinions he formed therein, the prosecution history of a patent is a matter of public record that "speak[s] for [itself.]" *Resqnet.com, Inc. v. Lansa, Inc*., 2004 WL 1627170, at *5 (S.D.N.Y. July 21, 2004). Safe Foods can certainly hire its own experts to disagree with Dr. Bilgili's written declarations regarding the obviousness of Enviro Tech's methodology. But because Dr. Bilgili's declarations say what they say, testimony from him about his sworn declaration is unnecessary and remains minimally relevant to the determination of whether Safe Foods is infringing upon the '321 patent.

Finally, because Dr. Bilgili's testimony is of minimal importance to the pending litigation and because his declarations are part of the public record, the burden associated with deposing Dr. Bilgili is disproportionate to any value that may be gained from his testimony. Dr. Bilgili is retired and his opinion that Enviro Tech's methodology is unique is set forth in three separate sworn declarations. Dr. Bilgili should not be forced to now prepare for a deposition wherein he would be defending those same written declarations

when the written declarations are available. Therefore, the undersigned finds that the subpoena is unduly burdensome to Dr. Bilgili and should be quashed.

### 2. Whether the subpoena is an improper attempt to obtain expert testimony.

Even if the subpoena here is not unduly burdensome, it should still be quashed because it is an improper attempt to obtain expert testimony. Rule 45(d)(3)(B)(ii) permits a court to quash a subpoena "if it requires . . . disclosing an unretained expert's opinion[.]" The Rule seeks to "provide[] appropriate protection for the intellectual property of the non-party witness" in light of "[a] growing problem [of] the use of subpoenas to compel the giving of evidence and information by unretained experts." FED. R. CIV. P. 45(c)(3)(B)(ii) advisory note. The decision to quash a subpoena as improperly seeking expert testimony "should be informed by the degree to which the expert is being called because of his knowledge of the facts relevant to the case rather than in order to give opinion testimony." *Id.*

Expert testimony is opinion testimony based on a qualified expert's knowledge, skill, experience, training, or education applied to facts or data. FED. R. EVID. 702. Often times, the line between expert testimony and factual testimony is thin. *See MedImmune, LLC v. PDL Biopharma, Inc.*, 2010 WL 2794390, at *2 (N.D. Cal. July 15, 2010). When determining if testimony provided by an expert should be considered expert or fact testimony, the relevant inquiry is whether the testimony concerns information that was obtained directly through the observations of the witness rather than information that the witness came to learn from his or her own study. *Compare, e.g.*, *In re Public Offering PLE Antitrust Litig.*, 233 F.R.D. 70, 77-78 (D. Mass. 2006) (holding that testimony regarding

6

pricing practices in an industry that the nonparty expert allegedly observed as an industry participant would be factual testimony because it described events in dispute in the underlying antitrust litigation), *with Mylan Inc. v. Analysis Grp., Inc.*, 2018 WL 5043157, at *7 (D. Kan. Oct. 17, 2018) (holding that the types of materials requested—"internal deliberations, communications, predictions, assessments, recommendations, research and analysis, projections, estimates, draft advice, and analyses"—resulted from the nonparty's studies and therefore were subject to the protections in Rule 45(d)(3)(B)(ii) for unretained experts).

Here, Safe Foods wishes to depose Dr. Bilgili about his "previous testimony regarding the '321 Patent" that he provided via his written declarations. Resp. (Doc. 9) p. 9; *see* Declarations (Doc. 1-3). Specifically, Safe Foods seeks to examine Dr. Bilgili about "what assumptions he made to arrive at his opinion [that Enviro Tech's methodology was not obvious], what other conclusions he considered but rejected, or how his opinion would change if claim terms had different meanings." *Id.* at 12. Because this line of questioning would require Dr. Bilgili to delve into the details of how and why he reached his opinion in the pre-patent prosecution or would require him to provide a new opinion based on different inputs, the undersigned finds that the testimony sought is expert testimony that should be protected under Rule 45. *See, e.g., Thompson v. Glenmede Trust Co*., 1995 WL 752422, at *4 (E.D. Pa. 1995) (holding that deposition testimony sought "to explain the significance of the information in the reports and the reasons for [the witness's] conclusions" was expert testimony subject to the protections in Rule 45 for nonparties); *In re Schaefer*, 331 F.R.D. 603, 609 (W.D. Penn. 2019) (concluding that related to an expert's

7

"preparation and drafting of the RAND Report or other writings that she authored . . . plainly [sought] the compelled testimony of an unretained expert").

Further, Safe Foods has not shown why it has a substantial need to take Dr. Bilgili's deposition. To be sure, Dr. Bilgili's declarations are arguably relevant to the underlying litigation because—at least to some extent—they persuaded the PTAB to conclude that Enviro Tech's methodology claimed in the '321 patent was nonobvious, which ultimately led to the issuance of the patent. But as previously discussed, Safe Foods may acquire testimony from any number of experts other than Dr. Bilgili who may conclude the opposite—i.e., that the '321 patent is unpatentable as obvious over the same or similar art that Dr. Bilgili critiqued. Therefore, Safe Foods has not shown why deposing Dr. Bilgili—particularly when his written declarations are what the PTAB referenced in its decision and are available for review—is without substitute. And, finally, to the extent any percipient testimony could be extracted from Dr. Bilgili during deposition, such information would be of little relevance to Safe Foods's obviousness defense.

For these reasons, the undersigned finds that Safe Foods's subpoena impermissibly seeks expert testimony from Dr. Bilgili and should be quashed.

## V.    CONCLUSION

Accordingly, it is the

RECOMMENDATION of the undersigned United States Magistrate Judge that Dr. Bilgili's Motion to Quash (Doc. 1) be GRANTED.

It is further

ORDERED that the parties shall file any objections to this Recommendation **on or before December 15, 2022**.[3]  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1.  *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 8th day of December, 2022.

_____
Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE

---

[3]  Due to the current timing of the close of discovery in the Arkansas litigation and the upcoming holidays, the undersigned has shortened the usual period for filing objections in this matter. *See Sabal Trail Transmission, LLC v. 7.72 Acres In Lee Cnty., Ala.*, 2016 WL 10789585, at *1 (M.D. Ala. June 6, 2016) ("where exigencies exist, a court may shorten the time for filing objections."); *Securities and Exchange Commission v. Lauer*, 2016 WL 3225306, at *2 (S.D. Fla. Mar. 3, 2016) (shortening the usual fourteen day objection period due to concerns about the fiscal quarter end); *Esco Marine, Inc. v. SS Pacific Star*, 2011 WL 5026192 at *1, n.1 (E.D. Cal. Oct. 21, 2011) (shortening the time period for objections because "exigencies of the calendar require[d]" it) (quoting *United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978) (holding that trial court did not err in providing parties less than the [then-applicable] full ten-day period to file objections to the magistrate judge's report and recommendation where exigencies existed, stating that the ten-day objections period constituted a "maximum, not a minimum.")).